

# In the Missouri Court of Appeals
## Eastern District

<u>WRIT DIVISION FOUR</u>

| | | |
|---|---|---|
| STATE ex rel. LINDA PARROTT, | ) | |
| | ) | No. ED104007 |
| Relator, | ) | |
| | ) | |
| v. | ) | |
| | ) | Writ of Prohibition |
| THE HONORABLE SANDRA MARTINEZ, | ) | |
| Circuit Judge, St. Francois County, | ) | |
| | ) | |
| Respondent. | ) | Filed: March 29, 2016 |

<u>Introduction</u>

Linda Parrott (Relator) filed two Petitions for Writ of Prohibition with this Court seeking to prohibit the enforcement of Circuit Judge Sandra Martinez's (Respondent) Orders of November 13, 2015, and December 4, 2015, in the actions <u>State v. Linda Parrott</u>, Circuit Court of St. Francois County, Missouri, Cause Nos. 10SF-CR01409-01 and 10SF-CR-02189-01, wherein Respondent found Relator in violation of and revoked her probation. Relator also seeks an order directing Respondent to enter an order discharging Relator from probation. This Court issued a preliminary writ of prohibition in each case and directed Respondent to file an answer and suggestions in opposition to the petitions in prohibition. The preliminary orders in prohibition previously issued in this case are made permanent, as we find Respondent erred in denying Relator's motions to discharge her from probation for lack of jurisdiction.

Factual and Procedural Background

On June 3, 2011, Relator pled guilty in St. Francois County Circuit Court to one count of sale of a controlled substance[1] in Cause No. 10SF-CR01409-01 and one count of forgery[2] in Cause No. 10SF-CR02189-01. Respondent sentenced Relator to a 15-year term on the drug conviction and a concurrent 7-year term on the forgery conviction, suspended execution of sentence on both counts, and imposed two concurrent terms of 5 years' probation. Respondent ordered Relator to pay $5,505.18 in restitution[3] and $10,715.00 in court costs[4] within the first four years of her probation and on a schedule to be set by Relator's probation officer.

On February 6, 2013, an officer with the board of probation and parole filed an initial violation report against Relator. No hearing was ever held regarding the allegations in this report.

On April 8, 2014, seemingly on review of an initial violation report to be filed the following day, Respondent entered an order suspending Relator's probation. On April 9, 2014, Sonia Osia (Osia), Relator's probation officer, filed an initial violation report based on Relator's failure to pay court costs and restitution. The report indicated that as of March 31, 2014, Movant still owed $2,595.18 in restitution and $9,880.00 in court costs.[5] Osia reported Relator pays $25 per month toward her court costs "nearly every month" and "routinely" makes $100 monthly payments in restitution. The report indicated that,

---

[1] Section 195.211, Class B felony. All statutory references are to RSMo 2006, unless otherwise indicated.
[2] Section 570.090, Class C felony.
[3] For Cause No. 10SF-CR02189-01.
[4] Collectively for both causes, $114 for the Crime Victims' Compensation Fund, $625 in miscellaneous court costs and fees, and $9,976 for the 232 days Relator served in the St. Francois County Jail prior to entering her guilty plea. This figure does not include additional fees ordered for the services of the public defender. Notably, neither the orders of probation nor a separate document titled "Special Conditions" state Relator will be charged a board fee as part of her "court costs."
[5] Reflecting $2,910 in restitution payments and $835 in court cost payments, for a total of $3,745.

2

in response to the allegations of violation, Relator stated she receives $724 a month in disability, has two granddaughters in her care, and she was "trying" and "pay[ing] what I can." Osia reported Relator was willing to complete community service that is respectful of her physical disabilities in an attempt to decrease the outstanding balances. The report stated Relator had an earned discharge date of January 9, 2015.

Between Respondent's April 8, 2014 order suspending Relator's probation and January 9, 2015, Respondent conducted seven hearings, each scheduled as "revocation hearings." Following each hearing, Respondent ordered Relator to continue paying $100 a month toward restitution and $25 a month toward court costs. At a hearing on January 9, 2015, the court amended Relator's probation conditions relieving Relator from further restitution payments due to the victim's death and ordered Relator to pay $125 a month in court costs. In February 2015, Respondent ordered Relator to pay $250 in court costs every other month.

On September 28, 2015, counsel for Relator filed a Motion to Discharge Defendant from Probation for Lack of Jurisdiction Due to Earned Compliance Credits in each of Relator's outstanding cases. Counsel also filed a Notice for said motions to be heard on the already scheduled case review hearing set for October 9, 2015.

In her motions seeking discharge, Relator asserted she was entitled to credit for the 17 months between October 2012 and April 2014 that she was in compliance under Section 217.703,[6] reducing her probationary period by 510 days, and moving her probation expiration date from June 2, 2016, to January 9, 2015. Relator asserted the court had not made an affirmative manifestation of an intent to conduct a revocation hearing prior to the expiration of the probationary period, nor made every reasonable

---

[6] RSMo. Supp. 2013.

effort to notify Relator of a revocation hearing or to conduct a hearing prior to the expiration of the period as required by Section 559.036.[7]

On October 9, 2015, the State appeared but was unprepared to proceed on Relator's motions, reviewing the "rather lengthy motion" in court and stating it "would maybe like to look at this a little bit more." At the hearing, Respondent indicated "there's a standing order that if court costs are owed or restitution is owed they're not gaining their earned compliance credit" and the "court is allowed to say that you're not entitled to earned compliance credit if you owe court costs or restitution." Respondent stated such an order was proper because "the statute states that if you are not compliant with what is being ordered by the Court then you're not in compliance." Respondent did not rule on Relator's motions but set the matter for a probation revocation hearing on November 13, 2015.

At the hearing on November 13, 2015, the State presented evidence from Osia regarding the April 2014 violation report for nonpayment of court costs and restitution. Osia testified she had not seen Relator since the beginning of 2014 due to Relator's suspension from probation. At the hearing, the State submitted a "Case Party Fee Report" (Fee Report) from the St. Francois County Circuit Court, procured by Relator's counsel, detailing the court costs and fees in Relator's cases and the payments Relator had made on those costs.[8] Based on Osia's reading of the Fee Report, Osia testified that at the time of the November 2015 hearing, Relator had not paid her court costs in full and had only paid approximately $1,600 of her fees on both cases. When asked for a

---

[7] RSMo. Supp. 2013.
[8] The Fee Report does not set forth the amounts of restitution owed or paid by Relator.

recommendation, Osia testified "if [Relator] didn't make her payments, then…she would have to serve some sort of time. She would be revoked."

Osia testified she suggested in the April 2014 probation violation report Relator do community service to reduce her court costs as an alternative to revocation. Osia testified Relator has been on disability for the entirety of her probation term, was receiving $724 per month in April 2014, and that Relator reported she was not able to afford paying more than $125 per month in restitution and court costs. On cross-examination, Osia testified Relator had paid approximately $3,100 to $3,910 in restitution, and she "could be wrong" on the total because entries were made after Relator was suspended from probation. Osia acknowledged Relator made her payments "pretty steady" even though she missed a few.

Relator testified at the hearing she currently receives $748 per month in disability. Relator lives with her mother and has guardianship over two of her granddaughters. Relator testified she uses her income to pay her and her mother's bills, as well as to support her granddaughters. Relator stated she had been making monthly payments of $25 to the clerk for her court costs and $100 in restitution to the victim until the victim's death. Relator testified after victim's death, she applied the $100 a month to her court costs as ordered by Respondent. Relator stated that with Respondent's approval, she began paying $250 every two months toward her court costs until the court sent the matter to a collection agency. Since that time, Relator has been paying $125 a month to the collection agency.

After the presentation of evidence, Relator's counsel argued Relator did not willfully violate her probation, in that she was trying to make her payments and had, in

fact, paid substantial amounts. The State asserted the clerk's record of payments did not "match[] up" to Relator's testimony and argued Relator cannot argue she is too impoverished to pay the court costs because her financial situation has not deteriorated since the plea agreement when Relator agreed to pay the costs.

Respondent denied Relator's motions, finding the court retained jurisdiction over Relator's probation because Relator was not entitled to earned compliance credit due to noncompliance with the conditions of her probation. Respondent noted Relator was "pretty consistent for the most part" but that she missed a couple of payments "early on." Respondent expressed frustration over Relator's motion alleging lack of jurisdiction, finding such motion to be "offensive." Respondent reasoned Relator was "lucky" when the court placed her on "monitoring," forcing the court to "haul her in for not paying," when Relator "wasn't paying her restitution." Respondent ultimately found Relator violated her probation by not paying her court costs within four years as ordered in June 2011, and continued the matter to December 4, 2015, to decide whether to revoke Relator's probation. On December 4, 2015, Respondent revoked Relator's probation, sentenced Relator to 7- and 15-year terms of imprisonment, suspended execution of the sentences, and placed Relator on two new 5-year concurrent terms of probation.

Relator filed a Petition for Writ of Prohibition in each cause, seeking a writ barring Respondent from taking any further action other than vacating Respondent's orders dated November 13, 2015 and December 4, 2015, and directing Respondent to enter an order discharging Relator from probation.

In support of her petitions, Relator argues Respondent lost jurisdiction over her probation on January 9, 2015, and lacked the authority to revoke her probation or to place

6

her on a new term of probation in November and December 2015. Relator asserts Respondent misinterpreted and misapplied Section 217.703 regarding earned compliance credits, and failed to manifest an intent to conduct a revocation hearing or to make a reasonable effort to conduct said hearing prior to the expiration of the probationary period as required by Section 559.036.8.

This Court issued a preliminary order in prohibition in each case and directed Respondent to file an answer and suggestions in opposition. The Court consolidated Relator's Petitions for Writ of Prohibition in Case Nos. 104007 and 104008.

Respondent filed an answer and suggestions in opposition. We dispense with further briefing and oral argument as permitted by Rule 84.24(j).[9]

## Discussion

"Prohibition is a discretionary writ that may be issued to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent the exercise of extra-jurisdictional authority." McCoy v. Martinez, ED103719, 2016 WL 231487, at *2 (Mo. App. E.D. Jan. 19, 2016). At issue in this case is whether Respondent lacked jurisdiction to revoke Relator's probation in December 2015.

"'The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language.'" Lumetta v. Sheriff of St. Charles County, 413 S.W.3d 718, 720 (Mo. App. E.D. 2013), quoting Bateman v. Rinehart, 391 S.W.3d 441, 446 (Mo. banc 2013). If the legislature's intent is clear and unambiguous, the courts are bound by that intent and cannot resort to any statutory construction in interpreting the statute. Goerlitz v. City of Maryville, 333 S.W.3d 450, 455 (Mo. banc 2011). The courts presume every word, sentence, or clause

---

[9] All rule references are Mo. R. Civ. P. 2015.

7

in a statute has effect and the legislature did not insert superfluous language.  Lumetta,

413 S.W.3d at 720.  "'When the words are clear, there is nothing to construe beyond

applying the plain meaning of the law."  Id., quoting Bateman, 391 S.W.3d at 446.  "'A

court will look beyond the plain meaning of the statute only when the language is

ambiguous or would lead to an absurd or illogical result.'"  Id.

Further,

> The rules of statutory interpretation are not intended to be applied
> haphazardly or indiscriminately to achieve a desired result. Instead, the
> canons of statutory interpretation are considerations made in a genuine
> effort to determine what the legislature intended. This Court's primary
> rule of statutory interpretation is to give effect to legislative intent as
> reflected in the plain language of the statute at issue.

Goerlitz, 333 S.W.3d at 455, quoting Parktown Imports, Inc. v. Audi of America, Inc.,

278 S.W.3d 670, 672 (Mo. banc 2009).

Section 217.703 - Earned Compliance Credits

Section 217.703 provides the division of probation and parole shall award earned

compliance credits to any offender who is: (1) not subject to lifetime supervision under

Sections 217.735 and 559.106, (2) on probation, parole, or conditional release for an

offense listed in chapter 195 or for a class C or D felony, excluding certain named

offenses, (3) supervised by the board; and (4) in compliance with the conditions of

supervision imposed by the sentencing court or board.[10]  Section 217.703.1.

"Compliance" for the purposes of the section is defined as "the absence of an initial

violation report submitted by a probation or parole officer during a calendar month, or a

motion to revoke or motion to suspend filed by a prosecuting or circuit attorney, against

the offender."  Section 217.703.4.

---

[10] That Relator fulfills the first three requirements is not in dispute.

8

Earned compliance credits reduce a defendant's term of probation, parole or conditional release by thirty days for each full calendar month of compliance with the terms of supervision. Section 217.703.3. Eligible offenders begin to accrue credits after the first full calendar month of supervision or on October 1, 2012. Section 217.703.3.

With regard to the computation of time, the statute provides:

> Credits shall not accrue during any calendar month in which a violation report has been submitted or a motion to revoke or motion to suspend has been filed, and shall be suspended pending the outcome of a hearing, if a hearing is held. If no hearing is held or the court or board finds that the violation did not occur, then the offender shall be deemed to be in compliance and shall begin earning credits on the first day of the next calendar month following the month in which the report was submitted or the motion was filed. All earned credits shall be rescinded if the court or board revokes the probation or parole or the court places the offender in a department program under subsection 4 of section 559.036. Earned credits shall continue to be suspended for a period of time during which the court or board has suspended the term of probation, parole, or release, and shall begin to accrue on the first day of the next calendar month following the lifting of the suspension.

Section 217.703.5.

Once the combination of time served on probation, parole, or conditional release and earned compliance credits satisfies the total term imposed, "the board or sentencing court shall order final discharge of the offender, so long as the offender has completed at least two years of his or her probation or parole[.]" Section 217.703.7. The division of probation and parole shall notify the sentencing court or the prosecuting attorney of a probationer's impending discharge no less than 60 days before the date of the final discharge. Section 217.703.10. The award or rescission of any credits earned under the statute is not subject to appeal or post-conviction relief. Section 217.703.8.

Here, Respondent misinterpreted and misapplied Section 217.703. Contrary to Respondent's assertion, monthly "compliance" under the earned compliance credit statute

9

is not defined as the strict fulfillment of each and every term of probation in a given month but is defined as the absence of an initial violation report or a motion to revoke or suspend. Section 217.703.4. Respondent's position that she can unilaterally deny a probationer credit under the statute based upon her alternative definition of compliance ignores the plain and ordinary meaning of the statutory language.

In this case, two reports were filed against Relator during the applicable time period, one in February 2013 and one in April 2014; therefore, Relator did not accrue any credit for those months of noncompliance. Section 217.703.5. Because Respondent never held a hearing on the February 2013 violation report, Relator was deemed to be in compliance and began earning credits on March 1, 2013, the first day of the next calendar month following the report. Section 217.703.5. Following the April 2014 violation report, Respondent suspended Relator's probation until revoking Relator's probation in December 2015; thus, Relator did not earn any compliance credits following the April 2014 suspension.[11] Section 217.703.5. However, Relator earned compliance credits for the 4 months between October 2012 and January 2013 and the 13 months between March 2013 and March 2014, for a total of 17 months. Relator earned 30 days of credit for each month of compliance, for a total of 510 days of credit, moving the expiration date of Relator's probation from June 2, 2016 to January 9, 2015. In compliance with Section 217.703.10, the division of probation and parole notified Respondent and the prosecuting attorney that Relator's earned discharge date was January 9, 2015 via the April 2014 probation violation report, well within the required 60 days.

<u>Section 559.036 – Authority to Revoke Probation</u>

---

[11] Contrary to Respondent's Answer and Reply to Relator's Petition for Writ of Prohibition filed with this Court, Relator has never argued that she continued to accrue additional credits in the months following her April 2014 suspension.

If a defendant violates her probation, the court may revoke it. Section 559.036.3, 559.036.5, State ex rel. Strauser v. Martinez, 416 S.W.3d 798, 801 (Mo. banc 2014). The court's authority to do so, however, only extends through the duration of the probation term. Section 559.036.8, Strauser, 416 S.W.3d at 801. Suspending probation does not toll a defendant's probationary term past the expiration date. Jordan v. Flynn, 903 S.W.2d 261 (Mo. App. E.D. 1995).

Section 559.036.8 grants the court the power to revoke probation beyond the term of probation in certain circumstances, providing:

> The power of the court to revoke probation shall extend for the duration of the term of probation designated by the court and for any further period which is reasonably necessary for the adjudication of matters arising before its expiration, provided that some affirmative manifestation of an intent to conduct a revocation hearing occurs prior to the expiration of the period and that every reasonable effort is made to notify the probationer and to conduct the hearing prior to the expiration of the period.

Section 559.036.8.

Under this provision, the court may only revoke probation after the term has ended when the court (1) manifests its intent to conduct a revocation hearing during the probation term, and (2) makes every reasonable effort to notify the probationer and hold the hearing before the term ends. Strauser, 416 S.W.3d at 801.

Here, Respondent did not make every reasonable effort to hold the revocation hearing before the term ended. Respondent scheduled and conducted seven hearings between April 8, 2014 and January 9, 2015, each designated as a probation revocation hearing, thereby manifesting an intent to conduct such a hearing during the probation term. Strauser, 416 S.W.3d at 801 (trial court scheduling of a revocation hearing prior to expiration date of probation is manifestation of intent). Instead of ruling on the motion,

11

however, Respondent repeatedly continued the hearing. Relator always appeared in court and made the required payments before her scheduled court date. Relator appeared seven additional times for hearings and case reviews after her probation term ended and before Respondent finally ruled on the State's revocation motion in November and December of 2015. Because Respondent had numerous opportunities to rule on the revocation motion prior to the expiration of Relator's term of probation but chose not to, Respondent lacked the authority to revoke Relator's probation on December 4, 2015.

Based on the foregoing, Respondent erred in denying Relator's Motions to Discharge from Probation for Lack of Jurisdiction Due to Earned Compliance Credits.

There are several troubling aspects to this case. While the collection of court costs and restitution for victims as part of the penalty for committing a crime may be laudable in some circumstances, denying a criminal defendant his or her statutory rights in the process is not. In this case, Respondent's focus on extracting the most money possible from Relator appears singular.

The evidence presented at the hearing indicates Relator made real and substantial efforts to pay the court-ordered restitution and court costs but she has limited resources due to disability and was responsible for the guardianship and care of two minors. In April 2014, when the violation report supporting Respondent's ultimate revocation was filed, Osia recommended Relator be ordered to perform community service to offset her court costs in light of Relator's limited income, an arrangement Relator supported. After Respondent suspended Relator's probation, Osia had no further contact with Relator and nothing in the record indicates Respondent considered this recommendation. Instead, Relator was ordered to continue making payments and to regularly appear in court.

Eventually, Respondent revoked Relator's probation in December 2015 for a failure to pay the entirety of her costs and restitution within four years by June 2015 based upon allegations of missed payments in a violation report filed in April 2014. This action was taken only after Respondent's jurisdiction to act was challenged. The record indicates Relator collected annual disability income of approximately $8,688 to $8,976, between June 2011 and June 2015, for a total of $34,752 to $35,904. Relator was originally ordered to pay $16,220.18 in restitution and court costs, amounting to 45 to 46 percent of her meager income over this four-year period. These facts, on their face, suggest an inability to pay. While the State argued Relator should have never agreed to pay restitution and court costs if she could not afford to, it is unclear from the record whether Relator knew "court costs" included almost $10,000 in board fees for the privilege of being confined in the St. Francois County jail.[12]

During the November 2015 hearing, both the State and Respondent were repeatedly confused by the Fee Report setting forth the amounts paid by Relator to the court, frequently misreading it and *incorrectly* accusing Relator of shorting or missing payments. When Relator expressed surprise at the allegation of missed payments, Respondent replied simply that Relator missed some payments "early on." Osia, the State's witness supporting revocation, was unable to accurately testify to the amount of restitution paid because additional payments were made after Osia stopped following Relator's case a year and a half earlier. Meanwhile, Respondent derided Relator for

---

[12] Again, the orders of probation do not state Relator was responsible for paying board fees. Nothing in the record before this Court suggests Relator knew prior to entry of her guilty plea that she would be charged a board fee or that any such fee would be more than 1.5 times the combined total of the restitution and court costs delineated in the orders of probation.

failing to pay all of the original court-ordered restitution from which she had been relieved of paying almost a year earlier.

While the Fee Report shows Relator "missed" several payments over the years, it also definitively shows Relator satisfied every one of those missed payments, generally in the weeks or months afterward. In fact, Relator paid additional sums to her outstanding court costs on multiple occasions. The record demonstrates that in April 2014, when the probation violation report for nonpayment was filed and Respondent suspended Relator's probation; on January 9, 2015, the date Relator's probation term expired; and on November 13, 2015, when Respondent found Relator in violation of her probation for failing to pay in full, Relator was actually *ahead* in her scheduled payments.[13]

Ultimately, however, Respondent found Relator violated her probation by failing to pay the entirety of her debt within four years, or in June 2015, which was five months after her earned discharge date. The record shows Relator was instructed, first by her probation officer and then by Respondent, to pay $125 a month for restitution and court costs, an amount substantially less than was necessary for Relator to have paid her fees in full by Respondent's deadline. The establishment and continuation of this arrangement suggest Relator's probation violation and revocation was a foregone conclusion.

It appears Relator could be placed on a never ending merry-go-round of having her probation revoked and being placed on a new term of probation until these amounts are paid. Of course, that is not permitted by Missouri law. While the payment of restitution is an important function of the criminal justice system, with the death of the victim that is no longer a consideration. So, in this case we are left with a system in

---

[13] The Fee Report indicates at the time of the November 2015 hearing Relator had paid $1,774 in court costs, which does not reflect the additional $500 in payments Relator testified she made directly to the collection agency.

14

which all Missouri taxpayers have to pay for the salaries of judges, clerks, prosecutors, public defenders, and probation officers to collect money from a grandmother on disability supporting her grandchildren in order to operate the St. Francois County jail. The amount of resources devoted to this task is astonishing.

Of particular concern here is Respondent's assertion that a probationer cannot earn compliance credits if she owes outstanding restitution or court costs, regardless of the payment conditions ordered. Respondent's position effectively bars indigent probationers from obtaining statutory credits available to more affluent probationers. Respondent's order, as applied to this case, sought to deny Relator earned compliance credits under the statute even though she was ahead in her ordered monthly payments simply because she was too poor to pay the costs outright. This position is inconsistent with the plain language of the statute and is impermissible under the law.

Accordingly, we hereby order a permanent Writ of Prohibition barring Respondent from taking further action other than vacating Respondent's orders dated November 13, 2015, and December 4, 2015, and directing Respondent to enter an order discharging Relator from probation. Respondent is further directed to enter an order decreeing that any alleged outstanding fees and costs associated with the underlying causes be deemed satisfied in full.

## Conclusion

The preliminary orders in prohibition are made permanent and Respondent is directed to vacate her orders dated November 13, 2015, and December 4, 2015. Respondent is further directed to enter an order discharging Relator from probation and

decreeing that any alleged outstanding fees and costs associated with the underlying causes be deemed satisfied in full.

_Sherri B. Sullivan_
SHERRI B. SULLIVAN, P.J.

Mary K. Hoff, J., and
Robert G. Dowd, Jr., J., concur.

16