

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI ex rel. | ) | |
| CHRISTOPHER CULP, | ) | |
| Relator, | ) | |
| | ) | |
| v. | ) | WD82270 |
| | ) | |
| THE HONORABLE DENNIS ROLF, | ) | FILED: January 15, 2018 |
| CIRCUIT JUDGE, | ) | |
| Respondent. | ) | |

### Original Proceeding on Petition for Writ of Mandamus

### Before Writ Division: Alok Ahuja, P.J., and Gary D. Witt and Thomas N. Chapman, JJ.

In October 2015 Relator Christopher Culp was convicted in the Circuit Court of Lafayette County of one count of felony stealing, and was sentenced to a term of seven years' imprisonment. The circuit court suspended the imposition of Culp's sentence and placed him on five years' probation. The Board of Probation and Parole filed probation violation reports against Culp in March and April 2017. Because the circuit court did not hold a hearing or otherwise address the alleged probation violations, Culp filed a motion to be discharged from probation in September 2018. In his motion, Culp contended that his probation term had expired due to the passage of time, and due to his accrual of earned compliance credits under § 217.703.[1] The circuit court denied Culp's motion for discharge from

---

[1] Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2017 Supplement.

probation, concluding that Culp's accrual of earned compliance credits had been suspended by the pending violation reports.

Culp then filed a Petition for Writ of Mandamus and/or Prohibition in this Court, arguing that his probationary period had expired. Because we agree that Culp's probationary period had expired by the time he filed his motion for discharge from probation, we now issue our permanent writ in mandamus directing the circuit court to vacate its order denying Culp's motion. The circuit court only retained the authority to adjudicate the probation violations alleged in the March and April 2017 reports if the court satisfied the standards in § 559.036.8.

### Factual Background

On August 24, 2015, Culp was charged in the Circuit Court of Lafayette County with one count of felony stealing (Case No. 15LF-CR-00646). The charge was based on the allegation that, on or about May 21, 2015, Culp "appropriated a trailer and a tractor blade of a value of at least five hundred dollars." On October 19, 2015, Culp pleaded guilty to felony stealing. On the same day, the circuit court sentenced him to a term of seven years' imprisonment. The court suspended the execution of Culp's sentence, and ordered him to serve a five-year term of supervised probation.[2]

On March 16, 2017, the Department of Corrections' Board of Probation and Parole filed a Field Violation Report with the circuit court. The report stated that Culp had violated the conditions of his probation by possessing prescription drugs,

---

[2]     In *State v. Smith*, 522 S.W.3d 221 (Mo. banc 2017), the Missouri Supreme Court held that stealing property with a value of more than $500 did not constitute a felony offense under § 570.030.3(1) RSMo Supp. 2014, in light of the Court's decision in *State v. Bazell*, 497 S.W.3d 263 (Mo. banc 2016); the offense was instead punishable only as a misdemeanor. *See Smith*, 522 S.W.3d at 230-31. The Supreme Court later held, however, that the *Bazell* and *Smith* decisions did not apply retroactively to offenders, like Culp, whose convictions had become final. *State ex rel. Windeknecht v. Mesmer*, 530 S.W.3d 500, 503 (Mo. banc 2017).

methamphetamine, and marijuana, and by assaulting another person in an altercation over drugs. The report "recommend[ed] that Culp's probation be revoked and he be sentenced to the Department of Corrections." The March 2017 violation report stated that, based on earned compliance credits which had accrued as of March 2017, Culp had an "earned discharge date" of June 26, 2019; the report stated that "[c]ontinued supervision compliance will result in an optimal discharge date of 5-2-2018."

Based on the assault and drug-possession allegations contained in the Field Violation Report, the State filed an Application for Revocation of Probation in the circuit court on March 21, 2017. The circuit court issued a warrant for Culp's arrest the following day.

The Board of Probation and Parole filed a supplemental Field Violation Report with the circuit court on April 11, 2017, providing additional details concerning the drug possession and assault allegations contained in the March 16 report. The April 2017 report stated that Culp had an "earned discharge date" of June 26, 2019, and an "optimal discharge date" of June 1, 2018.

Following the filing of the supplemental violation report in April 2017, no further action took place in Culp's case for more than seventeen months. Then, on September 28, 2018, Culp filed a Motion to Withdraw Warrant and Discharge Mr. Culp from Probation. The Motion noted that under § 217.703, offenders like Culp are entitled to accrue "earned compliance credits," which shorten the offender's time on probation or parole by thirty days for every full calendar month in which the offender is in compliance with the conditions of his or her supervision. Culp's Motion argued that he was in "compliance" within the meaning of § 217.703 in every month other than March and April 2017 (the months in which the Board of Probation and Parole had filed Field Violation Reports against him). The Motion contended that Culp had accordingly earned thirty-day compliance credits for every

3

month beginning in December 2015, excluding March and April 2017. Based on his accrual of earned compliance credits, the Motion to Discharge asserted that Culp's probation had expired on June 1, 2018 (his "optimal discharge date"), and that he was accordingly entitled to be finally discharged from probation.

The circuit court denied Culp's Motion to Discharge on October 17, 2018. The court concluded that Culp's "probation has not yet expired because his receipt of earned compliance credit has been stayed by the pending Motion for Probation Revocation."

Culp filed his Petition for Writ of Mandamus and/or Prohibition in this Court on November 6, 2018. Culp's Petition argued that his probationary period expired on his optimal discharge date of June 1, 2018, and that the circuit court had erroneously concluded that the State's filing of a motion for probation revocation had suspended Culp's accrual of earned compliance credits. Culp's Petition requested that we issue "a writ of mandamus and/or prohibition . . . requiring [the circuit court] to discharge [Culp] from probation and prohibiting [the circuit court] from revoking [Culp]'s probation in *State v. Culp*, 15LF-CR00646-01."

We requested that the Respondent file suggestions in opposition to Culp's Petition. The Lafayette County Prosecuting Attorney's office filed Suggestions in Opposition on Respondent's behalf on November 20, 2018. The Suggestions in Opposition noted that, after the filing of Culp's writ petition in this Court, the circuit court held a probation revocation hearing on November 19, 2018, at which the circuit court found that Culp had violated the conditions of his probation. According to the Suggestions in Opposition, the circuit court did not enter a dispositional order at that time, however.

The Suggestions in Opposition argued that, "[i]f [probation is] revoked and [earned compliance credits] rescinded, [Culp]'s probation violation hearing would [have been] held within the probation term." If, on the other hand, Culp continued

4

to accrue earned compliance credits despite the filing of the violation reports in March and April 2017, and his probation term therefore expired on June 1, 2018, the Suggestions in Opposition argued that a November 2018 probation revocation hearing was nevertheless proper. The Suggestions in Opposition argued that a post-probation hearing was authorized under § 559.036.8, because the circuit court had manifested its intent to revoke probation during the probation period by issuing a warrant for Culp's arrest, and had exercised "every reasonable effort" to conduct a revocation hearing within the probation period, but was thwarted because "the whereabouts of [Culp] were unknown until November 5, 2018."

Culp filed a reply memorandum to respond to the Respondent's contention that "every reasonable effort" had been made to conduct a probation revocation hearing prior to June 1, 2018. Culp asserted that he had not absconded from probation, but was instead incarcerated on other charges in the Department of Corrections' Western Missouri Correctional Center in Cameron. Culp's reply memorandum argued that his whereabouts either were known to the circuit court and prosecuting attorney, or were easily discoverable by the court and prosecutor through the exercise of even minimal diligence.

Although not part of the record in this writ proceeding, we have been advised that on December 17, 2018, the circuit court held a further hearing and revoked Culp's probation in the underlying case, and ordered that his seven-year sentence be executed.

We now issue our permanent writ of mandamus, ordering that the circuit court rescind its October 17, 2018 order denying Culp's Motion to Discharge. Because Culp's probationary period expired on June 1, 2018, before the circuit court held any probation revocation hearing, the circuit court would only have authority to revoke Culp's probation if the conditions specified in § 559.036.8 have been satisfied. We are unable to determine on the present record whether the conditions

5

for a post-probation revocation hearing have been met in this case; that determination must be made by the circuit court in the first instance.[3]

**Discussion**

Resolution of Culp's Petition depends largely on the interpretation of § 217.703, which establishes the "earned compliance credit" program. Section 217.703 was amended twice in 2018.[4] Because Culp contends that his probationary period expired *before* the 2018 amendments became effective, we apply the statute as it existed prior to the 2018 amendments.

The pre-2018 version of § 217.703 provided in relevant part:

> 3. Earned compliance credits shall reduce the term of probation, parole, or conditional release by thirty days for each full calendar month of compliance with the terms of supervision. Credits shall begin to accrue for eligible offenders after the first full calendar month of supervision . . . .
>
> 4. For the purposes of this section, the term "compliance" shall mean the absence of an initial violation report submitted by a probation or parole officer during a calendar month, or a motion to revoke or motion to suspend filed by a prosecuting or circuit attorney, against the offender.
>
> 5. Credits shall not accrue during any calendar month in which a violation report has been submitted or a motion to revoke or motion to suspend has been filed, and shall be suspended pending the outcome of a hearing, if a hearing is held. If no hearing is held or the court or board finds that the violation did not occur, then the offender shall be deemed to be in compliance and shall begin earning credits on the first day of the next calendar month following the month in which

---

[3]     Rule 84.24 provides that, after the filing of suggestions in opposition to a writ petition, an appellate court will ordinarily issue a preliminary writ, and the case will then proceed with the filing of a formal answer to the petition, and briefing by the parties. Rule 84.24(i) provides, however, that "[w]henever in the judgment of the court the procedure heretofore required would defeat the purpose of the writ, the court may dispense with such portions of the procedure as is necessary in the interest of justice." Because the relevant facts and legal issues have been adequately presented by Culp's petition and the suggestions in opposition filed on behalf of Respondent, and given Culp's contention that he is presently incarcerated without statutory authority, we have determined in the interest of justice to proceed directly to issuance of a permanent writ in mandamus.

[4]     *See* H.B. 1355, 99th Gen. Assembly, 2nd Reg. Sess. (eff. Aug. 28, 2018); and H.B. 2, 99th Gen. Assembly, 1st Extraordinary Sess. (eff. Dec. 18, 2018).

6

the report was submitted or the motion was filed.  All earned credits shall be rescinded if the court or board revokes the probation or parole or the court places the offender in a department program under subsection 4 of section 559.036.  Earned credits shall continue to be suspended for a period of time during which the court or board has suspended the term of probation, parole, or release, and shall begin to accrue on the first day of the next calendar month following the lifting of the suspension.

. . . .

7.      Notwithstanding subsection 2 of section 217.730 to the contrary, once the combination of time served in custody, if applicable, time served on probation, parole, or conditional release, and earned compliance credits satisfy the total term of probation, parole, or conditional release, the board or sentencing court shall order final discharge of the offender, so long as the offender has completed at least two years of his or her probation or parole . . . .

*See generally State ex rel. Amorine v. Parker*, 490 S.W.3d 372, 374–75 (Mo. banc 2016) (describing operation of earned compliance credits under § 217.703); *State ex rel. Parrott v. Martinez*, 496 S.W.3d 563, 568–69 (Mo. App. E.D. 2016) (same).

Culp argues that, despite the filing of probation violation reports against him in March and April 2017, he resumed the accrual of earned compliance credits in May 2017.  We agree.[5]

Section 217.703.3 provides that eligible offenders accrue earned compliance credits "for each full calendar month of compliance with the terms of supervision." "[M]onthly 'compliance' under the earned compliance credit statute is not defined as the strict fulfillment of each and every term of probation in a given month." *Parrott*, 496 S.W.3d at 569.  Instead, "compliance" means "the absence of an initial violation report submitted by a probation or parole officer during a calendar month,

---

[5]      We recognize that § 217.703.8 provides that "[t]he award or rescission of any credits earned under this section shall not be subject to appeal or any motion for postconviction relief."  That provision is not implicated here, however, because Culp's "claim does not present a challenge to the division [of probation and parole]'s calculation of an award or rescission of earned compliance credits, but instead posits that the circuit court did not apply the earned compliance credits appropriately awarded him by the division." *Ban v. State,* 554 S.W.3d 541, 546 (Mo. App. E.D. 2018).

7

or a motion to revoke or motion to suspend filed by a prosecuting or circuit attorney, against the offender." § 217.703.4.

Section 217.703.5 specifies two circumstances in which the accrual of earned compliance credits will _not_ resume in the month following the filing of a violation report or a motion to revoke or suspend probation. _First_, § 217.703.5 provides that, following the filing of a violation report or a motion to revoke or suspend, accrual of earned compliance credits "shall be suspended pending the outcome of a hearing, if a hearing is held." _Second_, "[e]arned credits shall continue to be suspended for a period of time during which the court or board has suspended the term of probation, parole, or release." These are the only two circumstances under § 217.703 in which continued accrual of earned compliance credits is suspended, after the month in which a violation report or motion to revoke or suspend is filed. Thus, the circuit court misapplied the statute when it held that Culp's "receipt of earned compliance credit has been stayed by the pending Motion for Probation Revocation." The filing of a motion to revoke probation, standing alone, does not have the effect of suspending the accrual of earned compliance credits, beyond the month in which the motion is filed.

The two circumstances specified in § 217.703.5 for the continued suspension of Culp's accrual of earned compliance credits did not occur in this case. First, neither the circuit court, nor the Board of Probation and Parole, suspended Culp's probation. The court's issuance of an arrest warrant for Culp on March 22, 2017, did not by itself have the effect of suspending his probation. _See Starry v. State_, 318 S.W.3d 780, 784 n.8 (Mo. App. W.D. 2010).

Second, although the circuit court apparently held probation revocation hearings in November and December 2018 (after Culp filed his writ petition in this Court), those hearings would not have had the effect of suspending the accrual of earned compliance credits from March 2017 until the hearings occurred. Those

8

hearings would have taken place well *after* Culp was entitled to "final discharge" from his probation on his optimal discharge date of June 1, 2018, due to the earned compliance credits he accrued under § 217.703.  Although § 217.703.5 provides that the accrual of earned compliance credits "shall be suspended pending the outcome of a hearing, if a hearing is held," that provision cannot be interpreted to suspend the accrual of earned compliance credits indefinitely, based merely on a possibility that the court may someday hold a probation revocation hearing.  Instead, § 217.703.5 must be read in conjunction with the other statutes governing earned compliance credits and the operation of probation generally.  *See, e.g., State ex rel. Evans v. Brown Builders Elec. Co.*, 254 S.W.3d 31, 35 (Mo. banc 2008) ("In determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes *in pari materia*, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." (internal quotation marks omitted)).

The other statutory provisions addressing earned compliance credits and probation make clear that the accrual of earned compliance credits is not suspended indefinitely merely by the filing of a violation report, if a revocation hearing is not held prior to the offender's optimal discharge date.  Section 217.703.4 provides that an offender will generally be considered to be out of "compliance" with the terms of supervision only where "an initial violation report [is] submitted by a probation or parole officer *during a calendar month*."  (Emphasis added).  Section 217.703.5 itself provides that "the offender shall be deemed to be in compliance and shall begin earning credits on the first day of the next calendar month following the month in which the [violation] report was submitted or the motion [to revoke] was filed," unless a hearing is held on the report or motion.  Under § 217.703.7, "the board [of probation and parole] or sentencing court *shall order final discharge* of the offender" when the offender's time served, together with earned compliance credits, satisfy

the total term of the offender's probation. (Emphasis added). Section 217.703.10 provides that, "[n]o less than sixty days before the date of final discharge," the court and the prosecutor must be informed of an offender's "impending discharge" due to the operation of earned compliance credits.[6] The statute specifies that, "[i]f the sentencing court, the board, or the circuit or prosecuting attorney upon receiving such notice does not take any action under subsection 5 of this section, the offender shall be discharged under subsection 7 of this section." Finally, § 559.036.8 provides that the power of a court to revoke probation only extends for the duration of the probationary term, "and for any further period which is reasonably necessary for the adjudication of matters arising before its expiration, provided that some affirmative manifestation of an intent to conduct a revocation hearing occurs prior to the expiration of the period and that every reasonable effort is made . . . to conduct the hearing prior to the expiration of the period."

Considering these provisions together, an eligible offender's entitlement to earned compliance credits must be capable of being known as of the date on which he or she would be eligible for "final discharge" from probation through the operation of the earned compliance credits. If the circuit court fails to take action to suspend or revoke the offender's probation, or to rescind earned compliance credits, prior to that optimal discharge date, "the offender *shall* be discharged" from probation on that date. § 217.703.10 (emphasis added). Given that the State is under a mandatory statutory duty to "final[ly] discharge" an offender on his or her optimal discharge date, the offender's entitlement to discharge cannot be made to depend upon whether the court chooses to hold a probation revocation hearing *at a*

---

[6] This notice requirement was satisfied in this case by the violation reports filed in March and April 2017, both of which advised the court and the prosecution of Culp's "optimal discharge date" if he continued to accrue earned compliance credits. *See Parrott*, 496 S.W.3d at 569.

10

*later date.* We hold that, where (1) an offender on probation is eligible for earned compliance credits; (2) a violation report or motion to revoke probation is filed; but (3) the court does not suspend probation, a probation revocation hearing must be held within the time when the offender would otherwise be eligible for discharge based on the continued accrual of compliance credits, or else the court must satisfy the requirements of § 559.036.8.

The Missouri Supreme Court faced a similar statutory interpretation issue in *State ex rel. Strauser v. Martinez*, 416 S.W.3d 798 (Mo. banc 2014). *Strauser* involved the operation of § 536.036.7, which provides that a court may suspend probation when a motion to revoke is filed. Section 536.036.7 specifies that "[t]he probation shall remain suspended until the court rules on the prosecutor's or circuit attorney's motion, or until the court otherwise orders the probation reinstated." The prosecution in *Strauser* argued that a revocation hearing was not untimely, even though held outside the original probation period, because the circuit court had suspended the probationer's probation. The Supreme Court disagreed, holding that the power to suspend probation did not exempt the court from having to meet the "reasonable efforts" standard where it held a revocation hearing outside the regular probation period:

> [S]uspending probation without deciding whether probation should be revoked, as the trial court did in each of these cases, does not relieve a court from meeting both of the conditions provided by section 559.036.8. While a court may suspend probation upon a motion to revoke, the suspension cannot last indefinitely. Rather, probation will remain suspended only *until the court rules on the revocation motion.* This section makes it incumbent on the court to rule on a pending revocation motion. Further, statutory provisions are not read in isolation, but are construed together. When sections 559.036.7 and 559.036.8 are read together, it is clear that a court must rule on the revocation motion before the probation term ends unless it meets the two conditions outlined in the statute.

416 S.W.3d at 802 n.3 (citations omitted). We followed this aspect of *Strauser* in *State ex rel. Boswell v. Harman*, 550 S.W.3d 551, 556 (Mo. App. W.D. 2018). In the

11

present case, consistent with *Strauser*, we hold that the circuit court must hold a probation revocation hearing within the probationary term as shortened by an offender's earned compliance credits, or else satisfy the conditions described in § 559.036.8.

We therefore conclude that any probation revocation hearing held after June 1, 2018, occurred outside of Culp's probationary period. This does not end the inquiry, however. Although generally "the circuit court's authority to revoke probation ends when the probationary period expires," section 559.036.8 "provides for the extension of the circuit court's authority over a probationer 'for any further period which is reasonably necessary for the adjudication of matters arising before [the probationary period's] expiration.'" *State ex rel. Zimmerman v. Dolan*, 514 S.W.3d 603, 608 (Mo. banc 2017) (quoting § 559.036.8). To be entitled to this extension of authority, "the circuit court must show [(1)] 'some affirmative manifestation of an intent to conduct a revocation hearing . . . prior to the expiration of the period and [(2)] that every reasonable effort is made to notify the probationer and to conduct the hearing prior to the expiration of the period." *Id.* (quoting § 559.036.8); *see also, e.g.*, *Boswell*, 550 S.W.3d at 555.

The parties dispute whether the conditions of § 559.036.8 were satisfied in this case, and in particular whether the circuit court exercised "every reasonable effort" to conduct a probation revocation hearing prior to June 1, 2018. The State argues that Culp's whereabouts were not reasonably known, or knowable, to the circuit court at the time the March and April 2017 violation reports were filed, and that the circuit court made reasonable efforts to locate Culp by issuing a warrant for his arrest. For his part, Culp argues that his incarceration in a Department of Corrections facility was either known to the prosecutor and circuit court, or was easily determinable. We do not believe it is appropriate to resolve this factual issue in the context of this writ proceeding, where the circuit court did not address the

12

issue. Therefore, while we issue a permanent writ of mandamus ordering that the circuit court vacate its order denying Culp's motion for discharge from probation, the circuit court must determine in the first instance whether any probation revocation hearing held after June 1, 2018 satisfied the conditions of § 559.036.8.

## Conclusion

We issue our permanent writ in mandamus directing the circuit court to vacate its order denying Culp's motion for discharge from probation. The circuit court is directed to determine whether any probation revocation hearing held after June 1, 2018, satisfied the standards in § 559.036.8.

_____
Alok Ahuja, Judge

All concur.